UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAURICE GOENS,

          Plaintiff,

     v.

ADAMS & ASSOCIATES, INC., a
Nevada corporation; KELLY MCGILLIS,
an individual,

          Defendants.

No. 2:16-cv-00960-TLN-KJN

**ORDER DENYING PLAINTIFF'S
MOTION FOR REMAND**

      This matter is before the Court pursuant to Plaintiff Maurice Goens's ("Plaintiff") Motion for Remand to State Court.  (ECF No. 6.)  Defendant Adams & Associates, Inc. ("Defendant") opposes.[1]  (ECF No. 13.)  The Court has carefully considered the parties arguments.  For the following reasons, Plaintiff's Motion for Remand to State Court (ECF No. 6) is hereby DENIED.

I.     FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff filed this action with the Superior Court of the State of California for the County of Sacramento on March 23, 2016.  (ECF No. 1 at 14, 17.)  Plaintiff asserts state law claims against Defendant, his former employer, alleging claims under California's Fair Employment and Housing Act ("FEHA") for (i) race, religion and sex discrimination, (ii) wrongful termination in

---

[1]    Plaintiff brought suit against both Adams & Associates, Inc. and Kelly McGillis.  For clarity, the Court will refer to the respondant, Adams & Associates, Inc., as Defendant, and to Kelly McGillis by name (collectively, "Defendants").  The Court is uncertain whether Kelly McGillis has been properly served as the docket reflects that she has never entered an appearance in this matter.

1  violation of public policy, and (iii) retaliation, common law claims for (iv) harassment, and (v)

2  failure to prevent discrimination, (vi) wrongful termination, and (vii) intentional infliction of

3  emotional distress.  (ECF No. 1 at 20–26.)  Plaintiff asserts state law claims against Kelly

4  McGillis ("McGillis"), an individual who was employed by Defendant, alleging claims under

5  FEHA for (i) wrongful termination in violation of public policy, (ii) retaliation, and (iii) failure to

6  prevent discrimination, and common law claims for (iv) intentional infliction of emotional

7  distress, and (v) harassment.  (ECF No. 1 at 20–26; ECF No. 13 at 7 n.4.)

8      On May 5, 2016, Defendant removed this action to the United States District Court for the

9  Eastern District of California, alleging diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and

10  1441(b).  (ECF No. 1 at 2.)  Plaintiff moves to remand, arguing Defendant's Notice of Removal

11  was untimely.  (ECF No. 6 at 3.)  Plaintiff also argues that diversity jurisdiction is not

12  appropriate, stating that Defendant is a citizen of California and that Kelly McGillis is also a

13  citizen of California.  (ECF No. 6 at 3, 5.)  Defendant opposes Plaintiff's motion.  (ECF No. 13.)

14      **II.    LEGAL STANDARD**

15      A civil action brought in state court, over which the district court has original jurisdiction,

16  may be removed by the defendant to federal court in the judicial district and division in which the

17  state court action is pending.  28 U.S.C. § 1441(a).  The district court has original jurisdiction

18  over civil actions between citizens of different states in which the alleged damages exceed

19  $75,000.  28 U.S.C. § 1332(a)(1).  The party asserting federal jurisdiction bears the burden of

20  proving diversity.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) (citing *Resnik v. La Paz Guest*

21  *Ranch*, 289 F.2d 814, 819 (9th Cir. 1961)).  Diversity is determined as of the time the complaint

22  is filed and removal effected.  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131

23  (9th Cir. 2002).  Once jurisdiction attaches, a party cannot thereafter, by its own change of

24  citizenship, destroy diversity.  *Id.* at 1132.  Removal statutes are to be strictly construed against

25  removal.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

26      The amount in controversy is determined by reference to the complaint itself and includes

27  the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract.

28  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).  Where the complaint does not

1    pray for damages in a specific amount, the defendant must prove by a preponderance of the

2    evidence that the amount in controversy exceeds $75,000.  *Singer v. State Farm Mut. Auto. Ins.*

3    *Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d

4    398, 404 (9th Cir. 1996)).  If the amount is not facially apparent from the complaint, the Court

5    may "require parties to submit summary-judgment-type evidence relevant to the amount in

6    controversy at the time of removal."  *Id.* (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326,

7    1335–56 (5th Cir. 1995)).

8            Diversity requires that the citizenship of each plaintiff be diverse from the citizenship of

9    each defendant (i.e., complete diversity).  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  For

10   purposes of diversity, a corporation is a citizen of any state in which it is incorporated and any

11   state in which it maintains its principal place of business.  28 U.S.C. § 1332(c)(1).

12       **III.    ANALYSIS**

13           It is undisputed that Plaintiff is a citizen of California and the amount in controversy

14   exceeds $75,000.  (ECF No. 13 at 2.)  The Court must, therefore, determine whether removal was

15   timely and whether all Defendants are diverse from Plaintiff.

16               A.       Defendant timely filed its Notice of Removal.

17           Plaintiff argues that Defendant filed its Notice of Removal after the 30-day deadline for

18   removing a case to federal court.  (ECF No. 6 at 5.)  Plaintiff asserts that Defendant was served

19   with the summons and complaint on April 4, 2016.  (ECF No. 6-1 ¶ 5.)  Defendant filed its Notice

20   of Removal on May 5, 2016.  (ECF No. 1.)  Plaintiff argues that removal was 31 days after initial

21   service, one day beyond the 30-day period permitted under 28 U.S.C. § 1446.  (ECF No. 6 at 5.)

22           Defendant responds that it was never properly served, so the 30-day period never ran, and

23   thus its Notice of Removal was timely.  (ECF No. 13 at 7–8; ECF No. 14 ¶ 6.)  Defendant states

24   that on April 5, 2016, Plaintiff attempted to serve a security guard employed by a contractor

25   which provides guards for Defendant's facilities, and who was not authorized to accept service

26   for Defendant.  (ECF No. 14 ¶ 6.)  Defendant argues it answered the complaint out of an

27   abundance of caution, but was never properly served.  (ECF No. 13 at 8.)  Plaintiff did not file a

28   reply or respond to Defendant's argument.

                                                        3

1    Title 28 U.S.C. § 1446(b), requires removal of a case within 30 days of formal service.  28

2    U.S.C. § 1446.  "[A] defendant is not obliged to engage in litigation unless notified of the action,

3    and brought under a court's authority, by formal process."  *Destfino v. Reiswig*, 630 F.3d 952,

4    956 (9th Cir. 2011) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344,

5    347 (1999) (allowing a defendant to remove more than 30 days after he received a faxed courtesy

6    copy of the complaint, because the defendant removed within 30 days of being formally served

7    by certified mail)).

8    Pursuant to California Code of Civil Procedure § 416.10, "[a] summons may be served on

9    a corporation by delivering a copy of the summons and the complaint…[t]o the president, chief

10   executive officer, or other head of the corporation, a vice president, a secretary or assistant

11   secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general

12   manager, or a person authorized by the corporation to receive service of process.  CAL. CIV.

13   PROC. CODE § 416.10.  A "general manager" under the California statute includes "any agent of

14   the corporation of sufficient character and rank to make it reasonably certain that the defendant

15   will be apprised of the service made."  *Gibble v. Car-Lene Research, Inc.,* 67 Cal. App. 4th 295

16   (1998) (quoting *Eclipse Fuel Engineering Co. v. Superior Court,* 148 Cal. App. 2d 736, 745-46

17   (1957)) (internal quotation marks omitted).

18   Plaintiff has not attached proof of service to his motion.  (*See* ECF No. 6.)  Defendant's

19   General Counsel and Vice President of Human Resources, Tiffinay Pagni, has provided a

20   declaration in support of Defendant's opposition which provides additional detail about the

21   attempted service.  (ECF No. 14.)  The security guard whom Plaintiff attempted to serve works at

22   Defendant's Sacramento facility.  (ECF No. 14 ¶ 6.)  He is employed by a contractor which

23   provides security services to that facility and he is not employed by Defendant.  (ECF No. 14 ¶

24   6.)  The security guard was not authorized by Defendant to receive service of process.  (ECF No.

25   14 ¶ 6.)  The security guard, therefore, does not count for the purpose of service of process.

26   Accordingly, the Court finds that Defendant's removal was timely because service of

27   process was not effectively served on the April 4, 2016, date as alleged by Plaintiff and because

28   Plaintiff has failed to allege any further facts in support of his claim that removal was untimely.

1          B.      Defendant is a citizen of Nevada.

2          Plaintiff contends that Defendant's Notice of Removal is insufficient because Defendant

3 has not provided the required information to determine its corporate citizenship, such as: "(1) the

4 number of employees it has in each state; (2) the percentage of its sales originating in each state;

5 and (3) the percentages of its assets held in each state." (ECF No. 6 at 6–7.) Defendant asserts it

6 is a citizen of Nevada and argues that Plaintiff has applied the wrong legal test for corporate

7 citizenship. (ECF No. 13 at 2.) Plaintiff did not file a reply or respond to Defendant's argument.

8          "The federal diversity jurisdiction statute provides that 'a corporation shall be deemed to

9 be a citizen of any State by which it has been incorporated and of the State where it has its

10 principal place of business.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (quoting 28 U.S.C. §

11 1332(c)(1)). The Supreme Court has concluded that "the phrase 'principal place of business'

12 refers to the place where the corporation's high level officers direct, control, and coordinate the

13 corporation's activities. Lower federal courts have often metaphorically called that place the

14 corporation's nerve center.'" *Id.* at 80–81.

15          Tiffinay Pagni, Defendant's General Counsel and Vice President of Human Resources,

16 has provided a declaration which provides detail of Defendant's operation. (ECF No. 14.)

17 Defendant is a corporation organized and existing under the laws of the State of Nevada and has

18 been since September 25, 1990. (ECF No. 14 ¶ 2.) Defendant holds annual stockholder and

19 Board of Directors meetings, usually in the first quarter of the year. (ECF No. 14 ¶ 2.) These

20 meetings take place at Defendant's corporate office in Reno, as does Defendant's twice-annual

21 meetings for its Job Corps Center Directors during which Directors meet with corporate staff for

22 training, evaluation and strategic planning. (ECF No. 14 ¶ 2.) As for Defendant's high level

23 officers, Defendant alleges as follows:

24              All but one of Adams' top executives are based out of the Reno
               office, including President Roy Adams, Secretary and Vice
25              President of Administration Leslie Adams, Treasurer and Executive
               Director Dan Norem, Vice President of Finance Magdalena
26              Cleveland, Vice President of Information Technology Dino Cabal
               and [General Counsel and Vice President of Human Resources,
27              Tiffinay Pagni]. The single exception, President of Operations
               Susan Larson, currently resides in Maryland but spends 30 percent
28              of her time at the Reno office. Ms. Larson has purchased a home in

1    Reno and will soon relocate there permanently.

2    (ECF No. 14 ¶ 4.)  Defendant further alleges that although each of Defendant's Job Corps Centers

3    has its own local administrative departments for day-to-day operations, "policy decisions for the

4    entire company are made by the executives resident in the Reno corporate office.  All job

5    descriptions, personnel policies, employee terminations, benefits plans, retirement plans and

6    insurance policies are reviewed and approved in the Reno corporate office."  (ECF No. 14 ¶ 3.)

7    Plaintiff has not disputed these facts in its motion, (ECF No. 6.), nor filed a reply.

8         The Court finds Defendant has offered sufficient facts to show Defendant is incorporated

9    and has its principle place of business in Nevada, and is therefore a citizen of Nevada.

10        C.  McGillis does not defeat diversity jurisdiction.

11        Plaintiff asserts McGillis is a properly named defendant and a California citizen and,

12   therefore, defeats diversity jurisdiction because Plaintiff is also a California citizen.  (ECF No. 6

13   at 5.)  Diversity requires that the citizenship of each plaintiff be diverse from the citizenship of

14   each defendant (i.e., complete diversity).  *Caterpillar Inc.*, 519 U.S. at 68.  Defendant argues

15   Plaintiff failed to state a valid claim against McGillis and she is a sham defendant whose

16   citizenship should not be considered to establish diversity.  (ECF No. 13 at 8.)  Plaintiff did not

17   reply or respond to Defendant's argument.

18             i.      *Legal Standard*

19        "If a plaintiff fails to state a cause of action against a resident defendant, and the failure is

20   obvious according to the well-settled rules of the state, the joinder is fraudulent and 'the

21   defendant's presence in the lawsuit is ignored for purposes of determining diversity.'"  *United*

22   *Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (quoting *Morris v.*

23   *Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001)).  "In the Ninth Circuit, a non-diverse

24   defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all

25   ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not

26   possibly recover against the party whose joinder is questioned."  *Pacray v. Wells Fargo Home*

27   *Mortg., Inc.*, No. 2:16-CV-01111-KJM-EFB, 2016 WL 4474605, at *3 (E.D. Cal. Aug. 25, 2016)

28   (citing *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (9th Cir. 1992)).

1    "'A plaintiff need only have one potentially valid claim against a non-diverse defendant'

2    to survive a fraudulent joinder challenge." *Nasrawi v. Buck Consultants, LLC*, 713 F. Supp. 2d

3    1080, 1084 (E.D. Cal. 2010) (citing *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th

4    Cir. 1989)).  "Remand must be granted unless the defendant shows that the plaintiff 'would not be

5    afforded leave to amend his complaint to cure [the] purported deficiency.'" *Id. at* 1084–85 (citing

6    *Burris v. AT & T Wireless, Inc.,* 2006 WL 2038040, at *2 (N.D. Cal. 2006)).  The court, however,

7    should only consider facts alleged in the operative complaint, rather than causes of action or facts

8    which could be included in an amended complaint.  *Kruso,* 872 F.2d at 1426 n.12 (affirming a

9    court's refusal to review the plaintiff's proposed, amended complaint in deciding whether a

10   defendant had been fraudulently joined).

11                          *ii.      McGillis is a fraudulently joined defendant.*

12          As discussed above, Plaintiff asserts five state claims against McGillis.  (ECF No. 1 at 20–

13   26.)  Defendant argues Plaintiff has not stated any valid claims against McGillis because

14   McGillis, as an individual supervisor, cannot be liable for (i) wrongful termination in violation of

15   public policy, (ii) retaliation, or (iii) failure to prevent discrimination, and Plaintiff has failed to

16   plead sufficient facts to support claims for either (iv) intentional infliction of emotional distress,

17   or (v) harassment.  (ECF No. 13 at 8.)

18                                 a.      McGillis cannot be liable for causes of action which do not

19                                          apply to individual supervisors.

20          "The California Supreme Court has held that an 'individual who is not an employer

21   cannot commit the tort of wrongful discharge in violation of public policy.'" *Grigg v. Griffith*

22   *Co.*, No. 1:13-CV-01379-AWI-JLT, 2013 WL 5754986, at *3 (E.D. Cal. Oct. 23, 2013)

23   (dismissing with prejudice that cause of action against the plaintiff's former supervisor) (citing

24   *Miklosy v. Regents of Univ. of Cal.,* 44 Cal. 4th 876, 900–01 (2008)).

25          Non-employer individuals also cannot be held individually liable for claims of retaliation

26   under FEHA.  *Brown v. Kaiser Permanente*, No. 2:14-CV-1069-KJM-CKD, 2016 WL 4055034,

27   at *5 (E.D. Cal. July 26, 2016) (granting summary judgment in favor of the defendant individual

28   supervisor on the plaintiff's claims of discrimination and retaliation under FEHA).

Similarly, FEHA does not provide for individual liability for supervisors for failure to prevent discrimination and harassment, because only the employer owes a duty to the employee not the supervisor. *Pasco v. Red Robin Gourmet Burgers, Inc.*, No. 1:11-CV-01402-AWI, 2011 WL 5828153, at \*12 (E.D. Cal. Nov. 18, 2011), *report and recommendation adopted*, No. 1:11-CV-1402-AWI-SKO, 2011 WL 6153173 (E.D. Cal. Dec. 12, 2011) (citing *Fiol v. Doellstedt,* 50 Cal. App. 4th 1318, 1326 (1996)).

Accordingly, McGillis cannot be individually liable under substantive California law for wrongful discharge in violation of public policy, retaliation, or failure to prevent discrimination, so these claims against McGillis fail as a matter of law.

b.     Intentional Infliction of Emotional Distress

Defendant argues Plaintiff's only allegations with respect to McGillis relate to personnel management activities, which do not rise to the level of "outrageous conduct," an element of intentional infliction of emotional distress ("IIED").  (ECF No. 13 at 10–11.)

"The elements of IIED are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Robles v. Agreserves, Inc.,* 158 F. Supp. 3d 952, 977–78 (E.D. Cal. 2016) (citing *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001(1993)). "Conduct is 'extreme and outrageous' when it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id.*

"A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics,* 46 Cal. App. 4th 55, 80 (1996).  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Id.*  Personnel management activity includes, "hiring and firing, job or project assignments, office or work station assignment, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions,

1    deciding who will and who will not attend meetings, deciding who will be laid off." *Id*. at 64–65.

2            In his complaint, Plaintiff makes four allegations related to McGillis.  Plaintiff alleges that

3    McGillis terminated him on the last day of his probationary period, for reasons which Plaintiff

4    believes were pretextual, and Plaintiff states he believes that McGillis and Defendant

5    discriminated against him.  (Compl., ECF No. 1, Exh. A, ¶¶ 19, 23, 58, 86.)  Plaintiff alleges that

6    he "witnessed several hiring and termination decision by McGillis" that led him to believe she

7    made false statements about employees to reach "predetermined outcomes" regarding minorities

8    and union members.  (ECF No. 1, Ex. A, ¶¶ 21, 22.)  Plaintiff also states he believes McGillis and

9    Defendant undertook unlawful hiring and termination decisions. (ECF No. 1, Ex. A, ¶¶ 21, 22.)

10   Against all Defendants, Plaintiff alleges he "faced false statements in the workplace regarding his

11   performance and was terminated," and he received "negative reviews based on knowing

12   misstatements" and had his work hours reduced.  (ECF No. 1, Ex. A, ¶¶ 56, 57.)

13           Plaintiff has not alleged any facts showing McGillis engaged in actions outside of her

14   employment and supervisory duties.  The actions Plaintiff does allege — hiring and firing

15   decisions directed at Plaintiff and others, reviews and statements to Plaintiff regarding Plaintiff's

16   job performance, and work schedules — are activities California courts have expressly found

17   constituted personnel management activity.  *Janken,* 46 Cal. App. 4th at 64–65.  Plaintiff ascribes

18   a discriminatory animus to McGillis.  "[E]even if improper motivation is alleged," however,

19   personnel management activity is insufficient to support an IIED claim.  *Id.* at 80.

20           Plaintiff's IIED claim against McGillis fails because Plaintiff fails to allege facts

21   sufficient to state a claim.

22                              c.      Harassment

23           Defendant argues Plaintiff's factual allegations about McGillis "do not rise to the level of

24   severe and pervasive conduct," required to support a claim for harassment, but rather relate to

25   "typical necessary personnel management activities."  (ECF No. 13 at 10–11.)

26           "[T]he exercise of personnel management authority *properly delegated by an employer* to

27   a supervisory employee might result in discrimination, but not in harassment."  *Roby v. McKesson*

28   *Corp.*, 47 Cal. 4th 686, 706 (2009), *as modified* (Feb. 10, 2010) (citing *Reno v. Baird,* 18 Cal. 4th

640, 646 (1998); quoting *Janken* 46 Cal. App. 4th at 64) (alteration in original).  The *Roby* court explained, "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Id*. (emphasis original).

"'Harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.... [¶] ... [¶] ... [C]ommonly necessary personnel management actions ... do not come within the meaning of harassment.'" *Roby*, 47 Cal. 4th at 686 (citing *Reno,* 18 Cal. 4th at 645–47; quoting *Janken* 46 Cal. App. 4th at 63–65).

"Harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1281 (E.D. Cal. 2012) (quoting *Fisher v. San Pedro Peninsula Hosp.,* 214 Cal. App. 3d 590, 610 (1989)).  "A plaintiff must prove more than a few isolated incidents." *Id*.  The workplace must be "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions" of employment.  *Id*. (quoting *Kelly-Zurian v. Wohl Shoe Co.,* 22 Cal. App. 4th 397, 409 (1994)).

As discussed above, Plaintiff does not allege any facts regarding conduct by McGillis outside the scope of her employment and supervisory duties.  The activities Plaintiff does allege are the types that have been found to constitute personnel management activity.  *Janken,* 46 Cal. App. 4th at 64–65.  Additionally, the actions alleged are few and discrete, such as expressing to Plaintiff criticism of his job performance or terminating his employment.  Plaintiff has not alleged facts supporting a concerted pattern of harassment or a workplace permeated with discriminatory intimidation and ridicule.  *McKenna*, 894 F. Supp. 2d at 1281; *cf. Roby*, 47 Cal. 4th at 709 (finding harassment where a supervisor made demeaning comments to the plaintiff about her body odor and arm sores, refused to respond to her greetings, made demeaning facial expressions and gestures, and treated her differently in the handing out of small gifts).

Plaintiff's harassment claim against McGillis fails because Plaintiff fails to allege facts sufficient to state a claim.

10

For the reasons set forth above, McGillis is a sham defendant for purposes of diversity. Accordingly, her citizenship is disregarded.  Defendant has met its burden of showing that the remaining parties are diverse within the meaning of 28 U.S.C. § 1332.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's removal was proper, and it is hereby ORDERED that Plaintiff's Motion for Remand (ECF No. 6) is DENIED.

IT IS SO ORDERED.

Dated: July 25, 2017

Troy L. Nunley
United States District Judge